**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 138-77 QUEENS BLVD LLC,<br><br>                                         *Plaintiff*,<br><br>-*against*-<br><br>SCOTT E. SILVER,<br><br>                                        *Defendant*. | Case No. 1:22-cv-5155-KAM-MMH |

**SUR-SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**SCOTT E. SILVER'S MOTION TO DISMISS**

**LUNDIN PLLC**
Niall D. Ó Murchadha
John M. Lundin
Cynthia L. Botello
405 Lexington Avenue, 26th Floor
New York, NY 10174
Telephone: (212) 541-2402
NOMurchadha@LundinPLLC.com
JLundin@LundinPLLC.com
CBotello@LundinPLLC.com

*Attorneys for Defendant Scott E. Silver*

## **ARGUMENT**

Mr. Silver's Motion to Dismiss showed that any actions he took to interfere with the contract between Plaintiff and QB Wash was in furtherance of an economic interest he held as QB Wash's principal creditor, and that a pre-existing debtor-creditor relationship is a complete defense to a tortious interference claim.  Plaintiff's attempt to muddy the waters should not distract the Court from this fundamental legal principle.

**I.    PLAINTIFF'S "PERSONAL INTEREST" THEORY RELIES ON UNSUPPORTED ACCUSATIONS THAT ARE INSUFFICENT TO STATE A CLAIM**

As previously explained, Mr. Silver had an economic interest in QB Wash repaying the loans, and his alleged decisions to (1) impose a lien on Zachary Silver's personal bank account, (2) advise QB Wash to propose to buy out Plaintiff at a discounted price, (3) advise QB Wash not to abandon its business, (4) advise QB Wash to repay interest owed to him, and (5) advise QB Wash to stop paying rent to Plaintiff, were all in furtherance of this goal.  To avoid this obvious conclusion, Plaintiff asserts a conspiracy theory, viz. that all these activities were secretly motivated by Mr. Silver's personal agenda to take over the Premises or QB Wash's business for himself.  But the supporting facts alleged in the Complaint cannot take this conclusion over "the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As an initial matter, this argument fails because none of the first four items were the "but for" cause of QB Wash's breach: it was not a breach of the lease for Zachary to have agreed to a lien, or for QB Wash to have offered to buy the Premises, or for QB Wash to have rejected Plaintiff's settlement offers, or for QB Wash to have paid interest owed on its debt (and the interest repayment was unwound in bankruptcy anyway).  Plaintiff's sur-reply misstates the issue—Mr.

1

Silver's point is not that his activities were not *in se* a breach of the lease, but that they did not cause QB Wash to breach the lease.

The argument also fails because Plaintiff's theory is unsupported by the facts alleged in the Complaint. The theory that Mr. Silver wanted to take over QB Wash or the Premises for his own interest rests on two allegations: (1) that QB Wash did not have enough money to buy the Premises so it would have to be owned by Mr. Silver himself (Compl. ¶ 167) and (2) that Mr. Silver later bought a different car wash in Connecticut, so he must have wanted to buy the Premises too (*id.* ¶ 110).[1] But neither of these accusations holds any water; the first is pure guesswork that is clearly contradicted by the parties' course of dealings—everything previous had been financed by loans, so why not QB Wash's purchase of the Premises[2]—and the second is irrelevant. Mr. Silver buying a car wash in Connecticut says nothing about whether QB Wash or Mr. Silver himself would own the Premises. Plaintiff's personal interest theory rests on mere speculation and cannot withstand a motion to dismiss.

## II. PLAINTIFF'S "UNLAWFUL MEANS"[3] THEORY FAILS BECAUSE THE ONLY UNLAWFUL CONDUCT ALLEGED WAS NOT DIRECTED AT QB WASH

Tortious interference with a contract requires the defendant to have "intentional[ly] procure[d]" a third party to breach its contract with the plaintiff. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 392 (2d Cir. 2006). Similarly, for tortious interference with economic relations, "a

---

[1] Plaintiff may also be alleging that a $12,500 transfer from QB Wash was used to fund the car wash purchase, but this too is irrelevant, because it was unwound in the bankruptcy, and because Mr. Silver's use of the money he was repaid from QB Wash is immaterial. Plaintiff's sur-reply objects that the money was not paid to Wash Funding, but Mr. Silver is the defendant, not Wash Funding, so his pre-existing economic interest in QB Wash is at issue here.

[2] The Complaint admits that Zachary Silver (i.e. QB Wash), and Michael Wood (QB Wash's lawyer), not Mr. Silver, who offered to buy the Premises. Compl. ¶¶ 56, 65, 69.

[3] This argument also fails the "but-for" element because the only "fraud" was unwound in bankruptcy.

2

plaintiff must plead that the defendant directly interfered with a third party." *Posner v Lewis*, 18 N.Y.3d 566, 570 & n.2 (N.Y. 2012). These torts address the same conduct, differentiated by the interests to be protected and the level of culpability that must be shown. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). And the economic interest defense effectively moves the case from the former to the latter category—a party with an economic interest's conduct is less culpable, so "criminal or independently tortious" misconduct must be shown. *Id*. There is therefore no reason to think that the New York Court of Appeals would not apply the same "conduct directed at the breaching party" requirement the same way in both cases. *See White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 427 (N.Y. 2007) ("we note that [when the defendant is] protecting existing contractual relationships . . . liability is limited to improper inducement **of a third party** to breach its contract") (emphasis added); *Weber v. Tada*, 589 Fed. Appx. 563, 566 (2d Cir. 2014) ("any improper means must be directed at the breaching party, not at the victim of the breach").[4] None of Plaintiff's cases even discuss the issue of conduct directed at the breaching party. In *Broadspring, Inc. v. Congoo*, LLC, 2014 U.S. Dist. LEXIS 116070 (S.D.N.Y. Aug. 20, 2014), the tortious conduct was directed at the breaching party—the defendant's defamation and Lanham Act false advertising were aimed at the breaching party in order to deceive it into breaking off relations with the plaintiff. And *VT Records & TVT Music, Inc. v. Island Def Jam Music Group*, 244 F. Supp. 2d 263 (S.D.N.Y. 2003) predates the Court of Appeals' decision in *Carvel*. Nor did *Foster v. Churchill*, 87 N.Y.2d 744 (N.Y. 1996) or *Felsen v. Sol Cafe Mfg. Corp*, 24 N.Y.2d 682 (N.Y. 1969), hold that the general tortious interference rule that conduct must be directed at the breaching party did not apply to the "wrongful means" element.

---

[4] Connecticut tortious interference law is the same as New York law. *See id*. (in parent-subsidiary relationship, no claim for tortious interference can be brought unless the parent's conduct "may be sufficiently egregious to cross the line and become tortious").

Dated: February 14, 2023
      New York, New York

                                        **LUNDIN PLLC**

                              By: _____
                                    Niall D. Ó Murchadha
                                    John M. Lundin
                                    Cynthia L. Botello
                                    405 Lexington Avenue, 26th Floor
                                    New York, NY 10174
                                    Telephone: (212) 541-2402
                                    NOMurchadha@LundinPLLC.com
                                    JLundin@LundinPLLC.com
                                    CBotello@LundinPLLC.com

                                    *Attorneys for Scott E. Silver*