

Niall D. Ó Murchadha
NOMurchadha@LundinPLLC.com
929.564.5483

August 10, 2023

**BY ECF**
Hon. Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   138-77 Queens Blvd LLC v. Silver, No. 22-cv-5155-KAM-MMH

Dear Judge Henry:

We represent the Defendant, Scott E. Silver, and submit this letter-brief in opposition to Plaintiff's letter-motion seeking leave to amend the complaint after the deadline to do so has expired.  [Doc. No. 48.]

**Legal Standard**

Decision of a motion to amend is within the Court's discretion, and leave to amend should be freely granted, but an amendment must be denied on the grounds of futility if the proposed amendments would not survive an F. R. Civ. P. 12(b)(6) motion to dismiss.  *See, e.g., Thea v. Kleinhandler*, 807 F.3d 492, 496-97 (2d Cir. 2015); *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 389 (2d Cir. 2015).  Plaintiff's motion seeks leave to include three new tort claims—fraud in the inducement, aiding-and-abetting fraud, and conspiracy to commit fraud, but none of them would survive a motion to dismiss, so the amendment must be denied as futile.[1]

---

[1] Plaintiff tries to argue that the Court should ignore the futility analysis and instead defer the question to a later day, but its cases do not support its position.  In *Lubavitch of Old Westbury v. Inc. Vill. of Old Westbury*, 2021 U.S. Dist. LEXIS 188915, at *57-58 (E.D.N.Y. Sept. 30, 2021), the court did not address certain futility issues and directed a formal motion to dismiss because new, possibly outcome-determinative Supreme Court rulings had come out after the issues were initially briefed by the parties.  In *SEC v. Rayat*, 2022 U.S. Dist. LEXIS 152725, at *40 (S.D.N.Y. Aug. 24, 2022), the court's decision to put off its futility analysis was not supported by any reasoning. And in *Intercloud Sys., Inc. v. Integration Partners Corp.*, 2017 U.S. Dist. LEXIS 233172, at *3 (S.D.N.Y. July 31, 2017), the motion to amend was made in response to a fully-

**Elements of Common Law Fraud Claim**

As explained below, Plaintiff's three proposed new causes of action—fraud in the inducement, aiding-and-abetting fraud, and conspiracy to commit fraud—all rise or fall together based upon the merits of the central fraud claim. "To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995). "Under New York law, each element of a fraud claim must be shown by clear and convincing evidence." *Id.*

Plaintiff's motion to amend must be denied because it fails to plead a false representation, reasonable reliance, or proximate causation of damages. Notably, the Amended Complaint also fails to allege that it has received a written assignment of the right to assert these tort claims, all of which are premised on a false statement made years before the property was transferred to Plaintiff in 2020 (Am. Compl. 31). *See, e.g., Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 819 F. Supp. 1282, 1289 (S.D.N.Y. 1993); *Commonwealth of Pa. Pub. Sch. Employees' Retirement Sys. v Morgan Stanley & Co., Inc.*, 25 N.Y.3d 543, 550 (NY 2015).

**The Proposed Amendment Does Not Plead A False Statement**

The only supposedly false statement that Plaintiff identifies is that, in December 2015, in response to Bert Wohl's demand for an accountant's "net worth letter or … other documentation of net worth," (Am. Compl. 97), Zachary Silver sent an email attaching an account statement, and the email stated "Attached to this email: Completed consent form for a background check. Proof of funds in excess of one million dollars. Account total- $1,075,829. $1,015,525 (Cash). $60,304 (Market)." Am Compl. 100. Plaintiff alleges that this email caused it to believe that "Zachary's net worth was many times higher than its true amount and that Zachary owned assets that satisfied the Net Worth Requirement" (Am. Compl. 107), but the email does

---

briefed motion to dismiss, so the court decided to address all the claims in one motion rather than rule piecemeal. *See id.* ("Although a motion to dismiss Plaintiff's first amended complaint is fully briefed, the Court believes that the wiser course would be to rule on the sufficiency of the proposed second amended complaint in the context of a fully briefed motion to dismiss that complaint, should Defendants choose to bring one"). Here, Plaintiff has given no practical basis to set aside the usual procedure.

not say either of these things. Zachary Silver's only relevant statement is that the attachment is "Proof of funds in excess of one million dollars," and Plaintiff does not allege that the account statement was itself false—it is undisputed that the account in question did contain $1,075,829 at the time the representation was made. Funds "in excess of one million dollars" did exist and were in the account. Net worth was not mentioned at all.

Taking Plaintiff's allegations in their most favorable light, the Amended Complaint is really trying to allege fraudulent concealment, namely Zachary Silver's failure to disclose that he did not intend to *keep* the $1 million in his account throughout the duration of his relationship with Plaintiff. But "[t]o establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information." *Banque Arabe*, 57 F.3d at 153. However, the "landlord-tenant relationship is not ordinarily a fiduciary one," and Plaintiff does not allege any "special relationship creating such a duty" between Plaintiff and Zachary Silver. *Clifford v. Hughson*, 992 F. Supp. 661, 670 (S.D.N.Y. 1998) (internal quotation omitted). Nor can Plaintiff assert a duty arising from Zachary Silver's possession of "superior knowledge, not readily available to" Plaintiff, *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Asso.*, 731 F.2d 112, 123 (2d Cir. 1984), because—for reasons set forth in the next section—where a plaintiff has the right to information that would confirm or disprove statements made, but fails to exercise that right, the responsibility is its alone. *See, e.g., Grumman Allied Indus. v. Rohr Indus.*, 748 F.2d 729, 738 (2d Cir. 1984) (rejecting "superior knowledge" basis for duty to disclose due to the plaintiff's failure to inquire).

**The Proposed Amendment Does Not Plead Reasonable Reliance**

It is settled New York law that, where a party has the ability to check information it receives but fails to do so, any reliance is *ipso facto* unreasonable. *See, e.g., Grumman*, 748 F.2d at 737-38 ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance"); *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 450 Fed. Appx. 32, 34 (2d Cir. 2011) (same, affirming 12(b)(6) dismissal for lack of reasonable reliance); *AHT Corp. v. Moses (In re AHT Corp.)*, 123 Fed. Appx. 17, 18 (2d Cir. 2005) (same); *Alexsam, Inc. v. Mastercard Int'l Inc.*, 2017 U.S. Dist. LEXIS 131631, at *7-8 (E.D.N.Y. Aug. 17, 2017) ("The principle that access bars claims of reliance on misrepresentations has been expressly recognized by this Court and New York State courts . . . . That MasterCard refused to allow Alexsam to audit its records on May 20, 2015, is inconsequential because Alexsam's audit rights were intact at the time of the alleged fraud or

misrepresentation, months earlier.") (internal citations omitted); *Project Verte, Inc. v. Zuchaer & Zuchaer Consulting, LLC*, 2021 U.S. Dist. LEXIS 127485, at *12 (S.D.N.Y. July 8, 2021) ("Instead of performing this reasonable due diligence, Project Verte put their faith on Defendants. While such faith may have been misguided, it does not create justifiable reliance as to the value of the property."); *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC*, 2007 U.S. Dist. LEXIS 75376, at *48 (S.D.N.Y. Oct. 3, 2007) ("Here, Jordan is an admittedly sophisticated investor who easily could have, but did not, obtain information from Beacon sufficient to determine . . . .").

And there is no doubt that the Lease gave Plaintiff broad power to get information about QB Wash and Zachary Silver. As the Amended Complaint acknowledges, the supposedly fraudulent statement was made in the context of an assignment of the lease from LB One to QB Wash, (Am. Compl. 36-41), and the Lease provides that the owner—Plaintiff or its predecessor—could bar any such assignment unless the assignor—LB One—provided specific information about the proposed assignee/new tenant. Specifically, section 73 of the Lease requires that the assigning tenant must provide "satisfactory information with respect to the nature and character of the business of the proposed assignee together with current financial information of the proposed assignee (and, if an entity, its principals) certified by a certified public accountant, together with references, including banking references, satisfactory to Owner."[2] The same section 73 also requires that the proposed assignee have "a net worth of not less than one million dollars ($1,000,000) . . . . prior carwash experience or other substantial experience successfully operating a small business." Accordingly, and very similar to the facts set forth in *Alexsam*, 2017 U.S. Dist. LEXIS 131631, at *7-8, Plaintiff had a contractual right to get all the information it needed about Zachary Silver's work history, business experience or lack thereof, and financial standing before it consented to the assignment. Plaintiff's failure to assert that contractual right prevents any claim of reasonable reliance.

**The Proposed Amendment Does Not Plead Causation Of Damages**

To properly allege causation, Plaintiff must do more than allege that, but-for the alleged false statement, it would not have accepted Zachary Silver as the guarantor in the lease. It must also allege that the false statements caused its eventual injury. *See, e.g., Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir. 1986) ("An injury is proximately caused if it is the natural and probable consequence of the defrauder's

---

[2] A copy of the applicable Lease provision is attached as Exhibit A. There can be no doubt that the Lease is "integral to" or "incorporated by reference in the complaint." *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud"); *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (but-for causation insufficient, "it must appear that damages flowing from fraud were proximate and not remote cause; damages must be natural and probable consequence of defrauder's acts").

Here, Plaintiff must plead facts establishing that Zachary Silver's December 2015 statement that he had a million dollars "natural[ly] and probabl[y]" caused QB Wash's failure to pay rent in 2020 and forced Plaintiff to incur litigation costs and attorney fees. And although the Amended Complaint uses those words, (Am Compl. 118-119), its argument for causation is highly attenuated and remote. Zachary's inability to pay a (hypothetical) judgment if he were sued on the guaranty (*id.* 119 (1), (3), (4)) is too contingent and remote because there was no requirement that Zachary keep the $1 million in his account during the entire term of the Lease—even if he had not transferred the money in March 2016, nothing in the Guaranty or anywhere else required Zachary to keep the money in his account forever. Even in the most favorable light, Plaintiff is alleging that Zachary Silver falsely represented that he owned $1 million in December 2015, not that he represented that that money would remain available indefinitely so that it could be attached by Plaintiff in 2021. And Plaintiff's other argument for proximate cause—Zachary's lack of "competence and judgment in business affairs, (id., 119 (2))—inadvertently makes Defendant's point; taking the Amended Complaint at face value, the real "intervening cause" of Plaintiff's losses was not Zachary Silver's lack of personal assets in December 2015, but his inability to manage QB Wash between 2016 and 2020. For instance, the Amended Complaint acknowledges that QB Wash had to borrow $967,500 from the Scott Silver Family Trust in June 2017 due to his inability to repay the seller note held by LB One (Am. Compl. 46), and there is no rational reason to think that Zachary Silver would not have used the $1 million transferred by his mother into the account if it were still available in his account.

### The Aiding-And-Abetting And Conspiracy Amendments Also Fail

Under New York law, claims for aiding-and-abetting fraud and conspiracy to commit fraud require an underlying fraud claim. If the fraud claim is dismissed, these secondary claims must be dismissed too. *See, e.g., Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 424 (S.D.N.Y. 2022) ("The Complaint does not plead claims of conspiracy to commit, and aiding and abetting, fraud. Such claims require an underlying common law fraud claim"); *Star Auto Sales of Queens LLC v. Iskander*, 2022 U.S. Dist. LEXIS 46022, at *12 (E.D.N.Y. March 15, 2022) ("Since plaintiff has failed to state a claim for fraud, its civil conspiracy to

commit fraud must fail too . . . . Since plaintiff has failed to adequately plead an underlying fraud, its aiding and abetting fraud claim must also fail").

Based upon the foregoing, Plaintiff's motion to amend should be denied in its entirety.

Respectfully submitted,

Niall D. Ó Murchadha